THOMAS E. MOSS
United States Attorney
NICHOLAS J. WOYCHICK, Civil Chief
U.S. Attorney's Office
District of Idaho
800 Park Blvd., Suite 600
Boise, Idaho  83712
Tel: 208-334-1211/Fax: 208-334-1414
nicholas.woychick@usdoj.gov

JOHN C. CRUDEN, Acting Assistant Attorney General
Environment & Natural Resources Division
J. BRETT GROSKO, Trial Attorney (Md. Bar)
Wildlife and Marine Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7369
Washington, DC 20044-7369
Ph: 202-305-0342/Fax: 202-305-0275
brett.grosko@usdoj.gov

Attorneys for the Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS and WESTERN WATERSHEDS PROJECT, ) ) ) | |
| Plaintiffs, ) ) | Case No.  CIV 08-508-E-LMB |
| vs. ) ) | |
| KEN SALAZAR, United States Secretary of the Interior, ) ) ) | |
| Defendant. ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiffs WildEarth Guardians and Western Watersheds Project ("Plaintiffs") challenge

the U.S. Fish and Wildlife Service's ("FWS" or "Service") 90-Day Finding concerning the

1

Columbian sharp-tailed grouse ("Grouse"). *90 Day Finding on a Petition to List the Columbian Sharp-Tailed Grouse as Threatened or Endangered*, 71 Fed. Reg. 67,318 (Nov. 21, 2006) ("Second 90-Day Finding"). FWS issued a second 90-day finding after deciding previously that the Grouse was not eligible for listing after analysis in previous 90-day and a 12-month findings. *90-Day Finding on a Petition to List the Columbian Sharp-tailed Grouse as Threatened*, 64 Fed. Reg. 57,620 (Oct. 26, 1999) ("First 90-Day Finding"); *12-Month Finding for a Petition to List the Columbian Sharp-Tailed Grouse as Threatened*, 65 Fed. Reg. 60,391 (Oct. 11, 2000) ("12-Month Finding"). This case concerns the Second 90-Day Finding, not the Service's prior decisions.

The motion and memorandum in support thereof (Dock. Entry No. 21 ("Pls. Memo.")) at bar seek to augment the administrative record filed by FWS on May 1, 2009. The Court should, however, deny the motion for the following reasons.

## STANDARD OF REVIEW

Judicial review in this case is governed by the record review principles embodied in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Pursuant to the APA, the court bases judicial review of a challenged agency action or decision on an administrative record. *See id.* (noting, in pertinent part, that "[i]n making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party"); *Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986) ("[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court") (citation omitted). The "'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-

2

makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis omitted) (citation omitted).

In this case, the Service compiled the administrative record and certified that it is complete. *See* Dock. Nos. 16 and 17. When a court is presented with a motion to augment, or "complete", the record with documents found in FWS's files, the agency's certification is entitled to a strong presumption of regularity. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971), citing *United States v. Chemical Found.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (citations omitted); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007); *Glasser v. Nat'l Marine Fisheries Service*, No. C06-0561BHS, 2008 WL 114913 (W.D. Wash. Jan. 10, 2008) (rejecting request to supplement record where plaintiff failed to "present clear evidence sufficient to overcome the presumption of administrative regularity that is afforded to the designation and certification of the administrative record,"); *Jones v. Rose*, No. CV-00-1795-BR, 2005 WL 2218134, *7 (D. Or. Sept. 9, 2005) (declining to supplement record where presumption of regularity not overcome); *Miami Nation of Indians v. Babbitt*, 979 F. Supp. 771, 776 (D. Ind. 1996) ("[t]he court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary.") (citation omitted). As one court within the Ninth Circuit has stated:

> While the "whole record" cited in § 706 was once broadly interpreted to require examination of 'the full administrative record that was before the Secretary at the time he made his decision, . . . the Ninth Circuit has since narrowed its reading to require only "all documents and materials directly or indirectly considered by agency decision-makers [including] evidence contrary to the agency's position."

3

> In reviewing an agency decision, the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, based on the administrative record that the agency compiles and submits to the court. An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity. Accordingly, "[i]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties."

*McCrary*, 495 F. Supp.2d at 1041 (internal citations omitted). The presumption of regularity serves an important purpose:

> The question left for the court is straightforward: who determines what constitutes the "full" administrative record that was "before" the agency? Common sense and precedent dictate that at the outset, the answer must be the agency. It is the agency that did the "considering," and that therefore is in a position to indicate initially which of the materials were "before" it--namely, were "directly or indirectly considered." If it were otherwise, non-agency parties would be free to define the administrative record based on the materials they believe the agency must (or should) have considered, leaving to the court the unenviable task of sorting through a tangle of competing "records" in an attempt to divine which materials were considered. . . . Hence the presumption that the agency properly designated the administrative record.

*Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 56-57 (D.D.C. 2003) (internal citations omitted), *vacated as moot*, 428 F.3d 1059 (D.C. Cir. 2005).

The practice of "supplementing" the record with documents not found within FWS's records, on the other hand, is subject to a somewhat different analysis. Supplementation is considered the exception, not the rule. "[T]he validity of that action must 'stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review." *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 549 (1978), quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973). "If that finding is not sustainable on the administrative record made, then the [agency] decision must be vacated and the matter remanded to [the agency] for further consideration." *Id.*

4

The Ninth Circuit has held that extra record materials may be considered in only four exceptional cases: (1) when the agency has failed to explain its actions so as to frustrate judicial review; (2) when it appears that the agency has relied on documents or materials not included in the administrative record; (3) when necessary to explain technical terms or complex subject matter involved in the agency action; or (4) when there is a showing of bad faith or improper behavior by the agency. *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). The scope of these exceptions is necessarily constrained to ensure that "the exception does not undermine the general rule." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005); *see also id*. ("[T]hese exceptions are narrowly construed and applied."); *Rybachek v. EPA*, 904 F.2d 1276, n.25 (9th Cir. 1990) ("The reviewing court may consider information supplemental to the record only exceptionally.") (emphasis added); *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1435-1438 (9th Cir. 1988) (extra-record evidence must be excluded where plaintiffs have "not demonstrated that it falls within any of the exceptions to the general rule" limiting judicial review to the record). Thus, if a plaintiff wishes to add documents to the record, the plaintiff must either – if the documents were in FWS's files at the time of the decision – overcome the presumption of regularity, or – if they were not – demonstrate that the proffered documents fit within one of the judicially recognized exceptions. As explained below, Plaintiffs have failed to meet their burden.

## ARGUMENT

Plaintiffs have asserted two categories of objections to the administrative record: (1) it does not include documents Plaintiffs obtained in response to two Freedom of Information Act ("FOIA") requests; and (2) the Court should supplement the record with five journal articles

("Journal Articles") that were not before FWS at the time of the decision at issue. The Service will address each objection in turn.

### 1. The FOIA Documents

Plaintiffs present no compelling basis for including any of the FOIA documents in the record. The number of documents compiled by the Service is very large, containing some 4,513 pages of letters, emails, personal communications, reports, and other documents regarding the Second 90-Day Finding. The Service has also voluntarily agreed to supplement the original record with eleven additional documents comprising 611 pages, for a total of 5,124 pages. Dock. Entry No. 20. Despite this large amount of materials produced, Plaintiffs suggest that the administrative record is incomplete to the extent it does not include every document released pursuant to Plaintiffs' FOIA requests. However, Plaintiff confuses the standards for FOIA with the appropriate contents of an administrative record for judicial review under the APA. A FOIA response and an administrative record are two independent processes carried out by an agency at different times pursuant to different statutes.

The FOIA's statutory purpose differs significantly from that of the APA. The FOIA imposes on agencies a "strong presumption in favor of disclosure," and its exemptions are "interpreted narrowly." *Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) *see also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989) (FOIA "is broadly conceived" and reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." (citations omitted)); *Nationwide Bldg. Maint. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977) (basic policy of FOIA is to encourage "maximum feasible public access to government information"). By contrast, a court's review of the merits of a plaintiff's claim under the APA is ordinarily confined to the administrative

6

record, which includes only "documents and materials directly or indirectly considered by agency decision-makers." *Thompson*, 885 F.2d at 555.  Furthermore, "Federal defendants are not required to produce, in an administrative record, every scrap of relevant paper." *South Yuba River Citizens League v. National Marine Fisheries Serv.*, No. 06-2845-LKK-JFM, 2008 WL 3932358, *4 (E.D. Cal. Aug. 26, 2008) (noting agency only "required to produce the administrative record on which the agency relied, either directly or indirectly, in reaching" decision at issue, and declining, "absent unique circumstances," to "expand the record beyond the record the agency considered in reaching its decision").  As the court explained in *Pacific Shores Subdiv. v. U.S. Army Corps of Eng's*, 448 F. Supp. 2d 1 (D.D.C. 2006), interpreting the administrative record "to encompass any potentially relevant document existing within the agency . . . would render judicial review meaningless." *Id*. at 5 (citations omitted).  Accordingly, the Court should not, like Plaintiffs, conflate the standards applicable under FOIA and the APA.

Additionally, Plaintiffs fail to show that the FOIA Documents were "considered" by FWS or overcome the presumption.  To do so, a movant "must do more than simply allege that the record is incomplete." *Ammex, Inc. v. United States*, 62 F. Supp. 2d 1148, 1156 (CIT 1999) (emphasis added); *see also People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. C05-03508 EDL, C05-04038 EDL, 2006 WL 708914, *2 (N.D. Cal., Mar. 16, 2006) (noting "[t]here is a presumption that the administrative record submitted by Defendants is complete, which Plaintiffs can rebut with clear evidence to the contrary") (citation omitted) (hereinafter "*Lockyer*").  "Rather, a party must provide the court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record. *Ammex, Inc.*, 62 F. Supp. 2d at 1156; *see also Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (holding that plaintiffs "must make a significant showing –

7

variously described as a 'strong', 'substantial', or 'prima facie' showing – that it will find material in the agency's possession indicative of . . . an incomplete record") (citations omitted). Here, neither of Plaintiffs' FOIA requests asked for the administrative record supporting the Second 90-Day Finding. Instead, both predated the decision at issue, and both requested documents on previous decisions and/or extremely broad categories of documents. For example, the March 3, 2003 request asked for documents contained in the administrative record for the 12-Month Finding and documents pertaining to the First 90-Day Finding. Dock. Entry No. 21 (Pls. Exh. B). Plaintiffs' March 6, 2006 request asked for broad categories of documents about the Grouse. There is no evidence in the record that FWS considered any of the FOIA Documents.

Plaintiffs also contend that the FOIA Documents "were in FWS' files and available to FWS decision-makers" and that by providing these documents in response to FOIA requests seeking information about the Grouse, FWS has somehow "acknowledged" that these documents are relevant to the Second 90-day finding. Pls. Memo. at 11. Yet nothing in Defendant's responses acknowledges anything of the sort. Pls. Exs. C, E, and I. The Court should accordingly deny the motion. *Cf. Lockyer*, 2006 WL 708914 at *2 (noting plaintiffs rebutted presumption with "strong showing" that documents were indirectly considered); *see also Oceana, Inc. v. Locke*, No. 08-318-ESH, 2009 WL 2024228, at 6-7 (D.D.C. July 13, 2009) (attached as Exh. 1) (rejecting plaintiffs' argument that documents obtained pursuant to FOIA request meant that agency decisionmakers considered them). The fact that FWS released these documents in response to a FOIA request is of no moment.

Moreover, Plaintiffs cannot overcome the presumption by stating that FWS was somehow required to consider every document in its files. Not only does this contention say nothing about whether FWS actually considered the FOIA Documents, even if it did, none of the

8

cases Plaintiffs cite support this argument.  For instance, Plaintiffs cite to *Environmental Defense Fund v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978), for this contention.  However, nowhere did the court in *Blum* suggest that any document found in an agency's files should be in the administrative record.  Rather, the court stated an agency may not exclude "highly relevant submissions."  *Id.* at 661.  There the agency had excluded documents including information that was "pertinent" to the decision at issue and were submissions that were an "integral part" of the rulemaking process.  *Id.*   Plaintiffs have not attempted to show that any of the FOIA Documents are "pertinent" to the 90-Day Finding.

Plaintiffs also cite to *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 32-33 (N.D. Tex. 1981) for the statement the "Court must look to all the evidence that was before the decision-making body."  Pls. Motion at 12 n.5, quoting *Exxon* at 32-33.  However, the next two statements make it clear that "[t]he 'whole' administrative record, . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position."  *Exxon* at 33 (citations omitted).  The court went on to state that "[m]atters not considered by the agency, . . . are outside the record evaluated for substantial evidence, are legally irrelevant, and therefore are not discoverable . . . ."  *Id.* (citations omitted).  *Exxon* therefore supports Defendants, not Plaintiffs.

Plaintiffs then take a quote from *Western Watersheds Project v. Kempthorne*, No. 06-0073, 2007 WL 2790404 (D. Id. Sept. 24, 2007) out of context to suggest that both the statute setting forth the 90-day review requirements and its implementing regulation make it plain that "the 90-day review is to be based on the petition alone or in combination with the [Service's] own records."  Pls. Motion at 12 n.6, quoting *Western Watersheds Project* at \*6.  However, *Western Watersheds Project* did not establish that agencies must include all of the documents in

their possession in the administrative record. Rather, there the court was dealing with a situation in which the movants contended FWS had sought information from a third party concerning an article the petitioner had cited. The movant contended that FWS has improperly expanded the universe of documents considered at the 90-day finding stage. *Id.* at *5. The court made it clear that FWS may not at the 90-day stage go outside the four corners of a petition, except to the extent it wishes to evaluate the information provided in a petition using documents in its files. Indeed, to require FWS to do so would convert the preliminary 90-day finding into a much more substantial inquiry more akin to a 12-month review. *Compare* 16 U.S.C. § 1533(b)(3)(A) ("within 90 days after receiving" a petition, "the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted"), *with* 16 U.S.C. § 1533(b)(3)(B) ("Within 12 months after receiving a petition . . . , the Secretary shall" make a full-fledged finding that the petitioned action is (a) warranted; (b) not warranted; or (c) warranted, but precluded by higher priority species). *Western Watersheds* therefore supports excluding the FOIA documents.

Plaintiffs also cite *Miami Nation*, 979 F. Supp. at 777, for the notion that a document "need not literally pass before the eyes of the final agency decision-maker to be considered part of the administrative record." *Id.* at 777 (citations omitted). They neglect to mention, however, that the government contended there that documents in dispute were "not part of the administrative record unless they were reviewed in some fashion by the ultimate decision maker, who in this case was the Assistant Secretary of Indian Affairs." *Id.* Defendants do not claim the FOIA documents should be excluded because they were not reviewed by the "ultimate decision maker", FWS Director Dale Hall. 71 Fed. Reg. 67,318, 67,325 (Nov. 21, 2006) (signature page

for Second 90-Day Finding). Here, there is no evidence that the FOIA documents were considered by any FWS employee at all in making the challenged decision.

This is not surprising, since none of the FOIA documents are relevant to the Second 90-Day Finding. Exhibits D, F, and G – a white paper on Distinct Population Segments ("DPSs") of the Columbian sharp-tailed grouse, e-mails concerning the species, and a background memorandum, respectively – predate FWS's previous 12-Month Finding from December 2000. If anything, they are relevant to that decision. Plaintiffs improperly seek to include these documents to expand the scope of their lawsuit. However, the statute of limitations ran with respect to the 12-Month Finding in 2006. 28 U.S.C. § 2401(a). The Court should therefore resist Plaintiffs' attempt to expand the Court's review to exhibits D, F, and G. With respect to Plaintiffs' Exhibit D, moreover, there has been no petition, at any time, to have the Grouse listed as a DPS. The last FOIA document, Exhibit J, concerns FWS's discussion with an individual about publishing an article concerning the 12-Month Finding. Plaintiffs have, accordingly, failed to allege how this e-mail chain – or any of the other FOIA Documents – is in any way related to their petition or FWS's Second 90-Day Finding. The Court should deny the motion as to the FOIA documents.

    **2.    Journal Articles**

Plaintiffs have also failed to justify completing or supplementing the record with any of the five Journal Articles. Pls. Exs. K, L, M, N, and O. Plaintiffs first contend that FWS had the Journal Articles in its possession and that it "directly reviewed at least four" of them. Pls. Memo. at 13; Pls. Exs. L, M, N, and O. However, they neglected to include the Journal Articles with their petition. Indeed, Plaintiffs' Memorandum states they merely "cited" them. Pls. Memo. at 13. They apparently would like to do so now, despite the fact that they

11

did not include them with the 78 other articles and other documents in their supplemental submission of November 8, 2006, a few weeks before FWS was scheduled to issue its decision. Administrative Record ("AR") Doc. Nos. 62-1308.

Moreover, the attached Declaration of Chris Warren demonstrates that none of the articles were in FWS's files at the time of its decision. Decl. of Chris. Warren (Exh. 2) ¶ 8 ("Warren Declaration"). The Warren Declaration additionally fully explains Mr. Warren's statement that "in general, information presented in [the four articles] appears reliable." Mr. Warren establishes that "[f]or the four sources included in the briefing letter to the Regional Director, the Service evaluated whether the literature was peer reviewed based upon the type of citation in the petition, not based upon a review of the actual source." *Id.* The fact that FWS assessed whether Plaintiffs' citations were to peer-reviewed journals does not mean that FWS considered their substance in any way. Plaintiffs have therefore not shown that Defendant "directly or indirectly" considered the Journal Articles. Plaintiffs' speculation that FWS must have had the articles in its files is therefore unfounded. Indeed, as Plaintiffs acknowledge, evidence in the record demonstrates that FWS did not request copies of these references. Pls. Exh. Q (regarding AR 101).

Nor have Plaintiffs demonstrated that any of the four exceptions to record review principles permit the Court to supplement the record. *See supra* at 5 (listing exceptions). Indeed, Plaintiffs do not even cite any of the exceptions or attempt to carry this burden. Accordingly, Plaintiffs' motion should be denied. *Cf. Animal Defense Council v. Hodel*, 840 F.2d 1432, 1435-1438 (9th Cir. 1988) (extra record evidence must be excluded where plaintiffs have "not demonstrated that it falls within any of the exceptions to the general rule" limiting judicial review to the record); *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of*

*Treasury*, 193 F. Supp. 2d 6, 18 n.11 (D.D.C. 2001) (noting Plaintiff had "not, . . . indicated which exception might apply in this case, nor has it offered cogent support for the application of any exceptions" and disregarding extra-record testimony). Even if they had made such an argument, it would not have merit. The 5,124-page record is more than adequate to explain the rationality of FWS's actions. Likewise, there is no evidence that FWS has relied on documents not included in the record, that supplementation is necessary to explain any technical terms or complex subject matter, or that FWS exhibited bad faith. The Court should decline to complete or supplement the record with the Journal Articles.

Unable to identify any applicable exception, Plaintiffs assert that somehow the ESA requires FWS to obtain documents merely cited by a petition. Pls. Memo. at 13. The Court should decline to do so.[1] *Western Watersheds Project v. Norton*, No. 06-00127-S-EJL, 2007 WL 2827375 (D. Idaho Sept. 26, 2007), cited by Plaintiffs, said nothing about whether FWS must consider cited sources that are not provided along with a petition. Nor does 50 C.F.R. § 424.12 support this statement. This regulation deals with criteria for designating critical habitat, not the contents of the administrative record, and has no bearing here. Plaintiffs therefore cite to no authority supporting their assertion.

Even if the Court were to look beyond their failure to cite any exception to the bedrock record review principles applicable here, additional reasons militate against including them. First, none of them were peer-reviewed, meaning they were of limited scientific value. Pls. Exh. P. Second, Exhibit K, a report by James Klott and Frederick Lindzey, was published twenty years before the Second 90-Day Finding. Plaintiffs have not explained how a 20-year old article could have informed FWS's decision. Third, Exhibit L, a letter from February 2001 from an

---
[1] This is Plaintiffs' sole contention as to Klott and Lindzey (Pls. Ex. K).

unidentified individual at the Idaho Fish and Game Commission, apparently is one page of a multipage letter. The incomplete letter also contains notes on it of unknown provenance. Fourth, Exhibit M is a two page document prepared by Rick Hoffman concerning the species in 2004. Plaintiffs present no evidence that the author ever finalized the document. Indeed, Plaintiffs' October 14, 2004 listing petition referred to it as an "unpublished report." AR 1732. Fifth, Exhibit N, like Exhibit L, contains notes and underlining that Plaintiffs leave unexplained. Finally, Exhibit O does not even mention the Grouse. Plaintiffs make no attempt to explain these documents' potential relevance, or why the Court should include doctored, incomplete documents. *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 56 (D.D.C. 2003) (rejecting motion to augment administrative record seeking to show that FWS should have considered certain documents). Nor should they be permitted to do so – or offer any other new arguments – in their reply. *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008).

      Finally, Plaintiffs suggest that because FWS has in the past – as a courtesy – requested references from petitioners, it should be required do so here. Yet they cite to no authority for this argument, and the plain language of the ESA makes it clear why Congress did not impose such onerous terms on FWS at the 90-day stage. Such a requirement would oblige FWS to – within 90 days: (a) maintain a database of all scientific files on a species; (b) check to see if articles cited exist in FWS's files; and (c) if not, request a copy from the petitioner. Then FWS would have to wait to receive and then review these documents. Because the purpose at the 90-day stage is to render a threshold determination, *Western Watersheds Project v. Hall*, No. 06-0073-S-EJL, 2007 WL 2790404 at * 6 (D. Id. 2007), the Court should not impose such a requirement on FWS.

14

**CONCLUSION**

For all of the reasons stated above, Plaintiffs' Motion to Supplement should be denied.

                                         Respectfully submitted,

                                         JOHN C. CRUDEN
                                         Acting Assistant Attorney General
                                         Environment & Natural Resources Division
                                         JEAN E. WILLIAMS, Section Chief
                                         LISA L. RUSSELL, Assistant Section Chief


                                                  */s/ J. Brett Grosko*
                                         _____

                                         J. BRETT GROSKO
                                         Trial Attorney (Md. Bar)
                                         Wildlife and Marine Resources Section
                                         Environment and Natural Resources Division
                                         U.S. Department of Justice
                                         P.O. Box 7369
                                         Washington, DC 20044-7369
                                         Ph: 202-305-0342/Fax: 202-305-0275
                                         brett.grosko@usdoj.gov


OF COUNSEL:

Eric Nagle
Office of Regional Solicitor
U.S. Department of the Interior

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on July 30, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Judith M. Brawer

James Jay Tutchton.

                                              */s/ J. Brett Grosko*
                                              J. Brett Grosko