MELISSA ANNE HAILEY, *pro hac vice*
JAMES JAY TUTCHTON, *pro hac vice*
WildEarth Guardians
1536 Wynkoop Street, Suite 301
Denver, CO 80202
(505) 988-9126
jtutchton@wildearthguardians.org
mhailey@wildearthguardians.org

JUDITH M. BRAWER (Bar No. 6582)
1502 N. 7th Street
Boise, Idaho 83702
(208) 871-0596
jbrawerlaw@cableone.net

*Attorneys for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

_____

WILDEARTH GUARDIANS and         )
WESTERN WATERSHEDS PROJECT,      )
                                )    Case No. CIV 08-508-EJL-LMB
        Plaintiffs,             )
                                )
  vs.                           )
                                )
KEN SALAZAR,                    )
United States Secretary of the Interior,  )
                                )
        Defendant.              )
_____ )


**PLAINTIFFS' COMBINED RESPONSE TO DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT FILED ON AUGUST 13, 2010, AND REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FILED ON JUNE 28, 2010**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     GUARDIANS HAS STANDING TO SUE ........................................1

        A.      The Salvo and Fite Declarations Are Properly Executed .............1

        B.      Each of Guardians' Declarations Properly Establishes Standing ...........2

                i.       The Nichols Declaration Demonstrates Guardians' Standing .........3

                ii.      The Salvo Declaration Demonstrates Guardians' Standing ...........5

                iii.     The Fite Declaration Demonstrates Guardians' Standing ...........5

III.    THE SECRETARY'S 90-DAY FINDING IS UNLAWFUL ..................6

        A.      Guardians' Petition Presented Substantial Information that the CSTG
                May Warrant Listing Across a Significant Portion of its Range .........6

                i.       The Substantial Information Threshold Is a Non-Stringent
                         Standard ................................................................6

                ii.      The Threshold Is Satisfied When Petitioners Show that there
                         Are Major Geographic Areas Where the Species Is No Longer
                         Viable but Once Was ..................................................7

        B.      The Secretary Must Explain Why Unoccupied Portions of Historic
                Range Are Not Significant to the Species .............................11

                i.       Ninth Circuit Precedent Controls at the 90-day Stage ..........11

                ii.      Including a Significant Portion of Range Analysis Does Not
                         Impermissibly Expand the Scope of the 90-day Review .........14

                iii.     The Secretary's Interpretation of Significant Portion of Range
                         Is Irrelevant at the 90-day Stage ..................................15

IV.     CONCLUSION .................................................................17

# TABLE OF AUTHORITIES

**Cases**

Board of Natural Resources v. Brown, 992 F.2d 937 (9th Cir.1992) .................... 2

Center for Biological Diversity v. Kempthorne, 588 F.3d 701 (9th Cir.2009) .......... 2

Center for Biological Diversity v. Kempthorne ("CBD Salamanders") 2007
  WL 163244 (N.D. Cal.) .............................................................. 7, 11-13

Center for Biological Diversity v. Morgenweck, 351 F.Supp.2d 1137
  (D. Colo. 2004) ...................................................................... 7, 10, 14

Clinton v. City of New York, 524 U.S. 417 (1998) ...................................... 2

Colorado River Cutthroat Trout v. Kempthorne, 448 F.Supp.2d 170
  (D. D.C. 2006) ........................................................................ 14

Defenders of Wildlife v. Norton ("Defenders Lizard I"), 258 F.3d 1136
  (9th Cir.2001) ...................................................................... 8-15

Defenders of Wildlife v. Salazar, ---F. Supp. 2d ---, 2010 WL 3084194
  (D. Mont. Aug. 5, 2010) .............................................................. 16

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) .................................. 2, 3, 5

Moden v. U.S. Fish and Wildlife Service, 281 F.Supp.2d 1193 (D. Or. 2003) ........... 10

Northwest Ecosystem Alliance, et al., v. Rey, et al., 380 F.Supp.2d 1175
  (W.D. Wash. 2005) .................................................................... 16

Summers v. Earth Island Institute, 129 S. Ct. 1142 (2009) ........................... 2, 5

Tucson Herpetological Society et al. v. Salazar ("Defenders Lizard II"), 566
  F.3d 870 (9th Cir.2009) ............................................................ 16

WWP v. Hall, 2007 WL 2790404 (D. Idaho) ............................................. 14, 15

Western Watersheds Project v. Norton, 2007 WL 2827375 (D. Idaho) ............... 6-8, 10-12, 14-17

**Statutes**

5 U.S.C. § 706(2)(A) ................................................................. 16

16 U.S.C. §1531(b) ................................................................................................4

16 U.S.C. § 1532(3) ...............................................................................................4

16 U.S.C. § 1532(6) ...............................................................................................7

16 U.S.C. § 1532(20) .............................................................................................7

16 U.S.C. §§ 1533(a)(1)(A)-(E) ............................................................................8

16 U.S.C. § 1533(b)(3)(A) ..............................................................................6, 14

16 U.S.C. §§ 1533(b)(3)(A)-(B) .........................................................................10

**Regulations**

50 C.F.R. § 424.11(c) ...........................................................................................8

50 C.F.R. § 424.14(b) ...........................................................................................6

**Local Rule**

Loc. Civ. R. 7.1(c)(1) ...........................................................................................1

## I.     INTRODUCTION

It is undisputed that the Columbian sharp-tailed grouse ("CSTG") has been extirpated across more than 90 percent of its historic range and that the subspecies has suffered major reductions to both its habitat and abundance.  What is disputed in this case is whether the ESA requires the Secretary to do anything about it.  While the Secretary contends that he can dismiss these major range reductions out of hand, it is Guardians' position that the Secretary must at least explain why the loss of these major geographical areas are not significant to the persistence of the species before refusing to consider federal protection.  As described in its motion for summary judgment and more fully explained herein, Guardians' position is well supported by statutory language, binding Ninth Circuit precedent, and the previous opinions of this Court. Accordingly, Guardians respectfully requests that the Court GRANT its motion for summary judgment, DENY the Secretary's cross-motion for summary judgment, and direct the Secretary to publish in the Federal Register a lawful 90-day finding on the CSTG within 90 days of this Court's opinion and order.

## II.     GUARDIANS HAS STANDING TO SUE[1]

### A.     The Salvo and Fite Declarations Are Properly Executed

In his cross-motion, the Secretary inexplicably argues that both the Salvo and Fite Declarations are unexecuted and therefore constitute invalid evidence that cannot support Guardians' standing to sue.  See Dkt. 45 at 16.[2]  This factual assertion is incorrect.  Both the

---

[1] Pursuant to Loc. Civ. R. 7.1(c)(1), Guardians filed its response to the Secretary's motion to strike portions of all three of its standing declarations as a separate brief.  See Dkt. 48 (responding to Dkt. 46-2 at 17-18).

[2] References to page numbers in previously filed documents refer to the page numbers as stamped by the Court – not to the internal page numbers designated by the document's author.

Salvo and Fite Declarations are properly executed and thus perfectly admissible to support Guardians' standing.  See Dkts. 35-4 and 35-5.

      **B.**     **Each of Guardians' Declarations Properly Establishes Standing**

The Secretary has launched a substantive attack against the Nichols Declaration and may launch a similar attack against the Salvo and Fite Declarations at any time.  See Center for Biological Diversity ("CBD") v. Kempthorne, 588 F.3d 701, 707 (9th Cir.2009) (standing is a jurisdictional issue, which can be challenged at any stage of the litigation).  Granted, only one of Guardians' declarations need satisfy the constitutional minimum in this case.  See e.g., Clinton v. City of New York, 524 U.S. 417, 431 fn.19 (1998); Board of Natural Resources v. Brown, 992 F.2d 937, 942 (9th Cir.1992) ("If any one of the[]…[parties] has standing, we may reach the merits of the…argument without considering whether the [parties] also have standing.").  Nonetheless, Guardians fully explains herein how each of the three declarations establishes its standing to sue.

The Supreme Court has well-articulated the Article III standing requirement:

> The doctrine of standing is one of several doctrines that reflect th[e] fundamental limitation [of the judicial power to cases and controversies].  It requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.  To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.  This requirement assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.

Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149 (2009) (emphasis in original) (internal quotes and citations omitted).  See also Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

### i.     *The Nichols Declaration Demonstrates Guardians' Standing*

Contrary to the Secretary's arguments, the Nichols Declaration easily demonstrates Mr. Nichols' "concrete and particularized" injury stemming from the Secretary's refusal to consider the CSTG for listing under the ESA.  See Dkt. 45 at 16-18 (claiming that the Nichols Declaration fails to establish injury in fact).

First, the Nichols Declaration shows a particularized, cognizable interest in the preservation of the CSTG and its present and historic habitat.  See Lujan, 504 U.S. at 563.  Mr. Nichols states that he was born and raised in Idaho, where he "frequently recreated in areas historically and presently inhabited by the [CSTG]."  Dkt. 35-3 at ¶ 3.  Mr. Nichols also states that he has "observed sharp-tailed grouse in its native habitat in southeastern Wyoming on the western side of the Sierra Madre Range," an area that he has "visited and enjoyed…frequently since 2001, returning at least annually to hike, view wildlife, and explore this unique country." Id., at ¶ 4.  Mr. Nichols further states his concrete plans to return to the Sierra Madre Range in 2010.  See id.

Second, the Nichols Declaration shows actual, perceptible harm to these aesthetic and recreational interests from the Secretary's negative 90-day finding.  See Lujan, 504 U.S. at 566. Mr. Nichols states:

> I am aware that the U.S. Fish and Wildlife Service [("FWS")][3] has rejected protecting the [CSTG] under the [ESA].  I am very concerned that given the grouse's precipitous decline and scarcity, that if it is not protected, it may decline to the point that it becomes extinct.  If this were to happen, it would harm my ability to enjoy the outdoors in the western Sierra Madre, as well as the many other areas within the current and historic range of the [CSTG] that I have visited and enjoyed over the years.

Dkt 35-3 at ¶ 6.

---

[3] As in Guardians' motion for summary judgment, Guardians uses "the Secretary," "FWS," and "the Service" interchangeably throughout this brief.

Third, it is easily established that a favorable decision will redress Mr. Nichols' injury. Should the Secretary protect the CSTG under the ESA, the subspecies will almost certainly not "decline to the point that it becomes extinct" as Mr. Nichols fears.  Dkt. 35-3 at ¶ 6.  Rather, by classifying the CSTG as either a threatened or endangered species, the Secretary would have to foster the CSTG's recovery, therefore adding to Mr. Nichols' enjoyment of the western Sierra Madre.  See 16 U.S.C. §§ 1531(b) and 1532(3) (purpose of the ESA is to conserve, i.e., recover, species to the point where they are no longer in danger of extinction, and thus no longer require ESA protection).

Irrespective of this showing, the Secretary argues that Mr. Nichols could not possibly have observed CSTG in the past and has demonstrated no intention to observe CSTG in the future.  See Dkt. 45 at 17-18.  This attack is baseless.

Despite the Secretary's contention that "none of 'southeastern Wyoming' is currently inhabited by CSTG," id., at 17, Mr. Nichols has declared under penalty of perjury that he has "recreated in areas historically and presently inhabited by the [CSTG]" and has "observed sharp-tailed grouse in its native habitat in southeastern Wyoming on the western side of the Sierra Madre Range."  Dkt. 35-3 at ¶¶ 3-4.  The Secretary has presented no information that the western side of the Sierra Madre Range is outside of the CSTG's range and has absolutely no basis upon which to suggest that Mr. Nichols has fabricated the information set forth in his declaration.

Furthermore, the Secretary's assertion that Mr. Nichols' Declaration is "devoid of any concrete plans to visit CSTG habitat" is poorly taken.  Dkt. 45 at 17.  Granted, Mr. Nichols has not indicated that he has "purchased an airplane ticket, made a reservation for accommodations, or made any other arrangements for his trip."  Id.  However, the western side of the Sierra Madre Range is a remote region made up primarily of public land.  See Dkt. 35-3 at ¶ 5.  Wild areas

such as this are better suited for "no-trace" campsites than for airports and hotels.  Mr. Nichols

stated his intention to return to the western Sierra Madre Range in July 2010.  See id., at ¶ 4.

Such a specific declaration of the month and year of intended future travel is a far cry from the

"some day" intentions the Supreme Court has warned against.  See Lujan, 504 U.S. at 564.

Thus, the Nichols Declaration adequately demonstrates Guardians' standing to sue.

   **ii.**  ***The Salvo Declaration Demonstrates Guardians' Standing***

  Guardians' standing to sue is also demonstrated by the Salvo Declaration.  See Summers,

129 S. Ct. at 1149 (setting forth three elements of the standing requirement: 1) injury in fact; 2)

causation; and 3) redressibility).  Mr. Salvo has cognizable personal and professional interests in

the protection of the CSTG.  See Dkt. 35-5 at ¶¶ 4-6 (efforts to protect CSTG and their habitat

are an organizational priority for WildEarth Guardians, where Mr. Salvo serves as the Director of

the Sagebrush Sea Campaign and coordinates the Western Grouse Project).  Mr. Salvo's interests

are injured, in a concrete and particularized way, by the Secretary's failure to consider the CSTG

for listing as a threatened or endangered species.  See id. at ¶ 6 ("I am…adversely affected…by

the rarity of the [CSTG]…and the failure of [FWS] to protect the species under the [ESA].).  A

favorable ruling by this Court would redress Mr. Salvo's injury, as his "efforts to recover the

species"  will no longer be "hindered."  Id.

   **iii.**  ***The Fite Declaration Demonstrates Guardians' Standing***

  Guardians' standing is further demonstrated by the Fite Declaration.  See Summers, 129

S. Ct. at 1149.  Ms. Fite's cognizable interests in protecting the CSTG are professional and

educational.  See Dkt. 35-4 at ¶¶ 1-4 (stating Ms. Fite's history with the CSTG as Senior

Wildlife Technician with the Idaho Department of Fish and Game and then as Biodiversity

Director for Western Watersheds Project ("WWP")).  Ms. Fite also has a recreational interest in

protecting the CSTG.  See id., at ¶ 8 (stating that Ms. Fite has been visiting areas surrounding CSTG leks since the 1990s in order to camp, hike, photograph wildflowers, bird-watch, and otherwise enjoy "the splendid high desert scenery").  Ms. Fite's interests are injured, in a concrete and particularized way, by the Secretary's failure to consider the CSTG for listing under the ESA.  See id., at ¶¶ 6-8 (describing Ms. Fite's sadness over witnessing the degradation and destruction of CSTG habitat).  A favorable ruling by this Court would redress Ms. Fite's injury, as it will promote "[s]urvival of this species," which "is essential to WWP fulfilling its mission to protect and restore western watersheds and native wildlife."  Id., at ¶ 5.

## III.   THE SECRETARY'S 90-DAY FINDING IS UNLAWFUL

### A.   Guardians' Petition Presented Substantial Information that the CSTG May Warrant Listing Across a Significant Portion of its Range

#### i.   The Substantial Information Threshold Is a Non-Stringent Standard

As both Guardians and the Secretary have indicated, the legal standard at the 90-day stage of the ESA petition process is "substantial information."  16 U.S.C. § 1533(b)(3)(A) ("To the maximum extent practicable, within 90 days after receiving the petition of an interested person…, the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted.").  "Substantial information" is that "amount of information that would lead a *reasonable* person to believe that the measure proposed in the petition *may* be warranted."  50 C.F.R. § 424.14(b) (emphasis added).

Importantly, the purpose of the 90-day finding is to determine whether listing the species may be warranted – not whether listing is actually warranted.  Thus, the substantial information standard is in "contrast to the 'best scientific and commercial data' standard applied to actually listing a species…" and does not require "conclusive evidence."  WWP v. Norton, 2007 WL

2827375 (D. Idaho).  In short, the substantial information threshold is a "non-stringent" standard.
CBD v. Kempthorne, ("CBD Salamanders") 2007 WL 163244 at *4 (N.D. Cal.), citing CBD v.
Morgenweck, 351 F.Supp.2d 1137, 1141 (D. Colo. 2004).  Nonetheless, "[i]t is the petitioner's
burden to provide the Service with the necessary substantial scientific or commercial
information."  WWP v. Norton, 2007 WL 2827375 at *2 (internal quotes and citations omitted).

Here, Guardians' petition presented substantial scientific information that the CSTG is
imperiled across more than 90 percent of its historic range, and thus – *under a non-stringent,
reasonable person standard* – warrants the Secretary's *consideration* for listing as either a
threatened or endangered species pursuant to the ESA.  See 16 U.S.C. §§ 1532(6) (defining
"endangered" species as one "in danger of extinction throughout all or a significant portion of its
range") and 1532(20) (defining "threatened" species as one "likely to become an endangered
species within the foreseeable future throughout all or a significant portion of its range.").
Specifically, Guardians' petition, which is 62 pages in length and supported by approximately
115 sources, fully describes how the CSTG is threatened by all five of the ESA listing factors
and cites undisputed scientific evidence showing that the CSTG is "imperiled over 92-95% of its
range."  Dkt. 35-1 at ¶ 10.  See also Dkt. 46-2 at ¶ 10 (accepting Guardians' characterization of
the facts).

### ii.     *The Threshold Is Satisfied When Petitioners Show that there Are Major Geographic Areas Where the Species Is No Longer Viable but Once Was*

Although the Secretary readily admits that the CSTG "currently occupies less than 10
percent of its estimated historic distribution," Dkt. 35-1 at ¶ 13, he argues that these "major
reductions" in both abundance and range, id., at ¶ 4, are not enough to satisfy the substantial
information threshold.  See Dkt. 45 at 7.  In so doing, the Secretary contorts the statutory listing

inquiry beyond recognition and reaches past the substantial information threshold to demand proof of significance through biological data.  The Secretary's argument must therefore fail.

First, the ESA requires the Secretary, in analyzing a listing petition at the 90-day stage, to determine whether the species at issue may be threatened or endangered across all or a significant portion of its range due to any one, or combination of, the five listing factors.  See 16 U.S.C. §§ 1533(a)(1)(A)-(E); 50 C.F.R. § 424.11(c).  See also WWP v. Norton, 2007 WL 2827375 at *3.  This is not the inquiry the Secretary applied to Guardians' petition.  Rather, the Secretary found that Guardians' petition did not present "substantial *new* information indicating that the level of threat to [the three CSTG] metapopulations *had changed significantly* since 2000" when he published his negative 12-month finding.  Dkt. 45 at 14 (emphasis added).  While this fanciful standard may have allowed the Secretary to avoid undertaking a 12-month status review of the species, it has no foundation in the language of the ESA.

Second, the Secretary erroneously insists throughout his cross-motion that, in order to pass the substantial information threshold, Guardians' petition had to contain evidence that the 92 to 95 percent of CSTG historic habitat that is currently unoccupied by the subspecies is biologically significant.  See Dkt. 45 at 7, 14, 19-21, and 45.  This perceived "deficiency" in Guardians' petition is rooted in the Secretary's overly zealous reading of Defenders of Wildlife v. Norton, wherein the Ninth Circuit rejected a strictly quantitative approach to assessing the significance of unoccupied historic range.  See Defenders of Wildlife v. Norton ("Defenders Lizard I"), 258 F.3d 1136, 1143-1144 (9th Cir.2001).[4]

---

[4] The Secretary states that Guardians "fail[s] to mention that the Ninth Circuit in Defenders of Wildlife expressly rejected the contention that a loss of a certain percentage of historical habitat necessarily implies that a subspecies qualifies for listing as threatened or endangered."  Dkt. 45 at 25.  Evidently, the Secretary did not read Guardians' Memorandum of Law, wherein

> Defenders' interpretation of the phrase "extinction throughout…a significant portion of its range" is similarly unsatisfactory.  Defenders takes a more quantitative approach to the phrase, arguing that the projected loss of 82% of the lizard's habitat in this case constitutes "a substantial portion of its range."
>
> \*  \*  \*
>
> There are two problems with Defenders' quantitative approach.  First, it simply does not make sense to assume that the loss of a predetermined percentage of habitat or range would necessarily qualify a species for listing… Furthermore, were a bright line percentage appropriate for determining when listing was necessary, Congress could simply have included that percentage in the text of the ESA.

<u>Defenders Lizard I</u>, 258 F.3d at 1143.

The Secretary reads too much into the Ninth Circuit's rejection of Defenders' strictly quantitative approach.  Indeed, under the Ninth Circuit's holding in <u>Defenders Lizard I</u>, it would be improper for the Secretary to list a species as threatened or endangered solely because it has lost a large portion of its historic habitat.  <u>See id.</u>  However, the Ninth Circuit's holding does not discount the possibility that the loss of a large portion of historic habitat *might* signal the fact that a species warrants listing.  To the contrary, <u>Defenders Lizard I</u> requires the Secretary to heed large losses of habitat as a harbinger that listing *may* be warranted.

> We conclude, consistently with the Secretary's historical practice, that a species *can be* extinct "throughout…a significant portion of its range" if there are major geographical areas in which it is no longer viable but once was.  Those areas need not coincide with national or state political boundaries, although they can.  The Secretary necessarily has a wide degree of discretion in delineating "a significant portion if its range," since the term is not defined in the statute.  *But where, as here, it is on the record apparent that the area in which the lizard is expected to survive is much smaller than its historical range, the Secretary must at least explain [his] conclusion that the area in which the species can no longer live is not a "significant portion of its range."*

<u>Id.</u>, at 1145 (emphasis added) (internal citation omitted).

---

Guardians quoted at length precisely this portion of the Ninth Circuit's opinion.  <u>See</u> Dkt. 35-2 at 15-16.

This distinction between the propriety of considering large habitat losses as a valid indication that a species *might* be in trouble versus the impropriety of considering large habitat losses as conclusive evidence that a species *is* in trouble seems to have escaped the Secretary. See Dkt. 45 at 26 ("If raw size of the range were the only determinative factor, virtually every non-domestic subspecies of wildlife in North American would be listed.")  Similarly lost on the Secretary is Guardians' point that once it demonstrated undisputed scientific evidence that "there are major geographical areas in which [the CSTG] is no longer viable but once was," the Secretary was under an obligation to "at least explain [his] conclusion that the area in which the species can no longer live is not a 'significant portion of its range.'"  Defenders Lizard I, 258 F.3d at 1145.  The Ninth Circuit requires no more of ESA petitioners.  Whether Guardians' petition included evidence that the unoccupied historic habitat is biologically significant to the CSTG is irrelevant.

The Ninth Circuit's holding in Defenders Lizard I is in complete accord with the substantial information threshold, which sets a low bar requiring far less from the petitioner than "conclusive evidence."  See WWP v. Norton, 2007 WL 2827375 at *5, citing Moden v. U.S. Fish and Wildlife Service, 281 F.Supp.2d 1193, 1202-1203 (D. Or. 2003) and Morgenweck, 351 F.Supp.2d at 1141.  Though the Secretary argues that Guardians is attempting to "shift the burden to FWS" to analyze the significance of the CSTG's lost historical range, Dkt. 45 at 6, that burden has always fallen on the agency.  The ESA sets forth a two-step listing process under which the Secretary must initially "screen" listing petitions to determine whether they present substantial information that listing may be warranted ("step one"), and, if so, thereafter undertake a 12-month status review to determine whether listing is actually warranted ("step two").  See 16 U.S.C. §§ 1533(b)(3)(A)-(B).  Under this two-step process, it is petitioners burden to raise one or

more "red flags" regarding a species' status and FWS's burden to investigate whether those "red flags" signal actual imperilment.  Indeed, if it were not FWS's burden to analyze "significance" as used within the context of the ESA, the agency could hardly claim the scientific expertise entitling it to deference.  See Dkt. 45 at 19 (claiming FWS "scientific expertise" in the CSTG listing decision).

**B.**     **The Secretary Must Explain Why Unoccupied Portions of Historic Range Are Not Significant to the Species**

      **i.**     ***Ninth Circuit Precedent Controls at the 90-day Stage***

The Ninth Circuit's holding in Defenders Lizard I is equally as applicable at the 90-day stage ("step one") as at the 12-month stage ("step two").  Although the Secretary argues at length that applying this holding to his negative 90-day offends the statutory scheme as well as Ninth Circuit case law, he overlooks the fact that this Court and others have already noted the propriety of applying Defenders Lizard I at "step one" in the listing process.  See e.g., WWP v. Norton, 2007 WL 2827375; CBD Salamanders, 2007 WL 163244.

For instance, when analyzing the Secretary's negative 90-day finding on WWP's petition to list the Pygmy Rabbit, this Court stated:

> [WWP] also argues that he Service failed to consider the status of the Pygmy Rabbit across a significant portion of its range as required by the ESA.  In support of this argument, [WWP] cites to Defenders of Wildlife v. Norton, 258 F.3d 1136 (9th Cir.2001) where the court there held that the Service was required to address whether the species in question was extinct throughout a significant portion of its historical range.

> The facts of this case are distinct from those in Defenders.  In Defenders the court concluded that "a species can be extinct 'throughout…a significant portion of its range' if there are major geographical areas in which it is no longer viable but once was." 258 F.3d at 1145.  Here, the Service never reached this question as it had concluded that the Petition did not show a decline in range nor a link between the loss of habitat and loss of population or a loss of habitat where Pygmy Rabbits are actually found.  Thus the fact that the significant portion of the range was not examined is not error at this stage of the proceedings.  However, the Court has determined above that the Service's finding regarding the habitat loss and geographic range were arbitrary and capricious.

> *Accordingly, if necessary based on the Service's findings on remand, the Service is*
> *directed to consider this factor as directed in Defenders.* Defenders, 258 F.3d at 1145
> ("the Secretary must at least explain her conclusion that the area in which the species can
> no longer live is not a 'significant portion of its range.'").

WWP v. Norton, 2007 WL 2827375 at *7 (emphasis added).

Accordingly, although this Court did not ultimately apply the Ninth Circuit's holding to the Pygmy Rabbit negative 90-day finding, it indicated that such application would be appropriate if FWS concluded that the petition showed a decline in range or a loss of habitat where Pygmy Rabbits are found.  See id.  In the present case, Guardians' petition established just that.  Specifically, Guardians' petition established that the CSTG has been extirpated from 92 to 95 percent of its historical range.  See Dkt. 35-1 at ¶ 10.  This is not "circumstantial evidence," Dkt. 45 at 24, but rather scientifically sound analysis solicited by FWS for the purpose of assessing the status of the CSTG.  See Dkt. 35-1 at ¶¶ 7-8.[5]  The Court should continue in its reasoning of WWP v. Norton and extend the holding of Defenders Lizard I to the present case.

To be sure, the District Court for the Northern District of California has already applied the Ninth Circuit's holding within the context of the 90-day stage.  See CBD Salamanders, 2007 WL 163244 at *9-*10.  In evaluating a challenge to the Secretary's negative 90-day finding on CBD's petition to list the Siskiyou Mountains and Scott Bar salamanders, that Court explained:

> As discussed above, a species may be listed as endangered if it is "in danger of extinction
> throughout…a significant portion of its range."  16 U.S.C. [§] 1532(6).  A species is
> threatened if it "is likely to become an endangered species within the foreseeable future
> throughout…a significant portion of its range."  16 U.S.C. [§] 1532(20).  Here, the
> petition requested that the Service…consider whether either the Siskiyou Mountains
> salamander or Scott Bar salamander should be listed as threatened or endangered
> throughout a significant portion of its range…  Plaintiffs contend that the Service erred

---

[5] The Secretary attempts to discredit the statements of Dr. Bart in its cross-motion, suggesting that the Court should not consider them.  See Dkt. 45 at 20-21.  Undoubtedly Dr. Bart's comments, letters, and reports are unfavorable to the Secretary in this litigation.  See Dkt. 35-1 at ¶¶ 7-9 and 19; Dkt. 49-1 at ¶ 35.  However, the Secretary is not free to cherry pick which items within the administrative record *he* lodged with the Court are now appropriate for consideration.

by failing to conduct "significant portion of the range" analyses…  Defendants do not deny that those analyses were not done.  Defendants instead contend that such analyses were not required in light of the lack of substantial information regarding the salamanders' habitat and in support of the five listing factors.

In <u>Defenders of Wildlife v. Norton</u>, 258 F.3d 1136, 1145 (9th Cir.2001), the Ninth Circuit explained that a species "can be extinct 'throughout…a significant portion of its range' if there are major geographical areas in which it is no longer viable but once was."  The Service rests on portions of the record that indicate that "little is known about [the species'] historic distribution" and that "the extent of habitat loss has not been quantified."  Plaintiffs point out, however, that there is other information in the record that "10% of potential habitat on the Applegate Ranger District was clearcut between 1980-1990" and that "[p]rivate lands (20%) within the range of the species are not expected to provide much, if any, suitable habitat for the species."  Moreover, the finding itself noted that "extensive logging has occurred in the Siskiyou Mountains salamander and Scott Bar salamander habitat for over one hundred years."  Thus, there is at least some evidence that there are "major geographical areas" where the salamander used to be, but no longer remains, viable.  In this case, whether the evidence meets the non-stringent "substantial information" standard is a determination for the Service to make – the Service having failed to do so the first time.

*       *       *

In light of the foregoing, this order VACATES the 90-day finding and REMANDS to the Service to issue another 90-day finding in accordance with this order.  Specifically, the Service must…evaluate whether the salamanders…may be threatened or endangered throughout a significant portion of their range.

<u>Id.</u> (emphasis in original).

Certainly, in the present case, Guardians has presented more than "some evidence that there are 'major geographical areas' where the [CSTG] used to be, but no longer remains, viable."  <u>CBD Salamanders</u>, 2007 WL 163244 at *10.  Again, Guardians' petition showed through undisputed, creditable scientific evidence that the CSTG is extirpated from 92 to 95 percent of its historical range.  <u>See</u> Dkt. 35-1 at ¶ 10.  Because Guardians has properly raised a "red flag" that the CSTG might be imperiled due to the loss of major geographical areas, it is the Secretary's duty to now undertake a 12-month status review in order to determine whether that loss is significant, so as to warrant listing.  At the very least, the Secretary must "explain [his] conclusion that the area in which the species can no longer live is not a 'significant portion of its

range.'" <u>Defenders Lizard I</u>, 258 F.3d at 1145; <u>WWP v. Norton</u>, 2007 WL 2827375 at *7 ("the

Secretary must at least explain h[is] conclusion that the area in which the species can no longer

live is not a 'significant portion of its range.'").

  **ii.**    ***Including a Significant Portion of Range Analysis Does Not Impermissibly Expand the Scope of the 90-day Review***

   In his cross-motion, the Secretary argues that, "[s]ince FWS is not permitted at the 90-

day finding stage to go beyond what is provided by the petition and what is currently available in

its files, the agency appropriately declined to speculate about the 'potential significance' of the

unoccupied portion of the subspecies' range." Dkt. 45 at 22. This argument is misplaced.

Granted, this Court and others have held that third party solicitation is improper at the 90-day

stage. <u>See</u> <u>WWP v. Norton</u>, 2007 WL 2827375 at *7-*8; <u>WWP v. Hall</u>, 2007 WL 2790404 at

*5-*6 (D. Idaho); <u>Colorado River Cutthroat Trout v. Kempthorne</u>, 448 F.Supp.2d 170, 175-76

(D.D.C. 2006); <u>Morgenweck</u>, 351 F.Supp.2d 1137. However, the purpose of the "no

solicitation" rule is to prevent FWS from targeting third parties to provide information that

refutes the claims made in otherwise meritorious petitions – *not to shield FWS from its*

*obligation to perform substantive analyses.*

   As this Court has previously explained:

> "[P]etitions that are meritorious on their face should not be subject to refutation by
> information and views provided by selected third-parties solicited by [the Service]."
> <u>Morgenweck</u>, 351 F.Supp.2d at 1143 (<u>citing</u> 16 U.S.C. § 1533(b)(3)(A) (if "petition
> presents substantial scientific or commercial information that the petitioned action may
> be warranted…the Secretary shall promptly commence a review of the status of the
> species concerned.")).

> *   \*     \*     \**

> As the Courts in <u>Colorado River</u> and <u>Morgenweck</u> noted, the "threshold determination as
> to 'whether the petition presents substantial scientific or commercial information
> indicating that the petitioned action may be warranted'…does not authorize the [Service]
> to weight the information provided in the petition against information selectively
> solicited from third parties" and thus convert[] the "90-day review and process to what is

14

effectively a 12-month review, but without the required notice and opportunity for the public to comment." Colorado River, 448 F.Supp.2d at 177.

WWP v. Norton, 2007 WL 2827375 at *7-*8. See also WWP v. Hall, 2007 WL 2790404 at *5-*6 (articulating similar reasoning).

Thus, the concern of the courts in not conflating the 90-day and 12-month stages is that FWS lets petitions stand on their own merits without refutation from third parties whose views are not subject to public critique. The present case does not present this issue. Guardians has not asked FWS to go beyond "the four corners of the petition[]" to "impermissibly expand[] the scope of the 90-day review." Dkt. 45 at 29, citing WWP v. Norton, 2007 WL 2827375 at *5. Rather, Guardians is demanding only that FWS accept the undisputed scientific evidence set forth in its meritorious petition that the CSTG is now absent from "major geographical areas in which the species is no longer viable but once was," Defenders Lizard I, 258 F.3d at 1145, and consequently move on to "step two" in the listing process. See Dkt. 35-1 at ¶ 10 (petition describes how CSTG is threatened by all five of the ESA listing factors and is currently absent from 92 to 95 percent of its historic range). As stated above, the Secretary simply is not permitted to forego this second step without a reasoned explanation as to why the "red flag" of historic habitat loss does not warrant a 12-month status review.

### iii. *The Secretary's Interpretation of Significant Portion of Range Is Irrelevant at the 90-day Stage*

The Court should likewise resist the Secretary's misguided assertion that the deference afforded him by Defenders Lizard I in interpreting the phrase "significant portion of range" somehow precludes his duty here to explain why a 90 percent loss of historical habitat is not significant to the CSTG. See Dkt. 45 at 26-27. The present litigation concerns only the Secretary's decision that Guardians did not present substantial information indicating that the

CSTG may warrant listing, i.e., the Secretary's negative 90-day finding.  This 90-day finding is distinct from the Secretary's potentially forthcoming 12-month finding, in which the Secretary will publish his conclusion that the CSTG either does or does not warrant listing.  The primary difference between the two decisions is that the 12-month finding is the product of the Secretary's thorough status review – not of Guardians' simple "red flag" raising.  Thus, the application of the Secretary's significance analysis comes only *after* the Secretary has given a positive 90-day finding.[6]

Here, the Court should concern itself only with ensuring that the Secretary's analysis in his 90-day finding is not arbitrary and capricious.  See 5 U.S.C. § 706(2)(A).

> An agency decision is arbitrary or capricious if: 1) the agency entirely failed to consider an important aspect of the issue; 2) the agency offered an explanation for its decision that was counter to the evidence before it; 3) the agency relied on factors that Congress did not intend for it to consider; or 4) the agency's decision is so implausible that it could not be ascribed to the product of agency expertise.

WWP v. Norton, 2007 WL 2827375 at *2, citing Northwest Ecosystem Alliance, et al., v. Rey, et al., 380 F.Supp.2d 1175, 1184 (W.D. Wash. 2005).

Because the Secretary failed to consider the significant portion of range issue, his negative 90-day finding for the CSTG is arbitrary and capricious.  See Tucson Herpetological Society et al. v. Salazar ("Defenders Lizard II"), 566 F.3d 870, 876-877 (9th Cir.2009) ("Defenders [Lizard I] left the appropriate criteria for testing 'significance' undefined, but made clear that the Secretary must develop some rational explanation for why the lost and threatened portions of a species' range are insignificant before deciding not to designate the species for protection.").  Guardians therefore requests that the Court direct the Secretary to issue a new,

---

[6] Interestingly, the District Court for the District of Montana just recently found the Secretary's current interpretation of "significant portion of range" contrary to the ESA.  See Defenders of Wildlife v. Salazar, ---F. Supp. 2d ---, 2010 WL 3084194 at *8-*12 (D. Mont. Aug. 5, 2010).

lawful 90-day finding on its petition to list the CSTG as a threatened or endangered species within 90 days of its opinion and order.  See <u>WWP v. Norton</u>, 2007 WL 2827375 at *9 (directing new 90-day finding on WWP's petition to list the Pygmy Rabbit within 90 days of opinion and order).

## IV.   CONCLUSION

For all the reasons stated in Guardians' motion for summary judgment, statements of fact, memorandum of law, standing declarations, this combined response/reply brief, and any forthcoming oral argument, Guardians requests that the Court GRANT its motion for summary judgment, DENY the Secretary's cross-motion for summary judgment, declare that the Secretary's negative 90-day for the CSTG is arbitrary, capricious, and contrary to the ESA, and order the Secretary to publish in the Federal Register a new, legally adequate 90-day finding for the CSTG within 90 days.

Dated this 10th day of September 2010.

Respectfully submitted,

 <u>s/ Melissa Anne Hailey</u>
Melissa Anne Hailey (NM Bar # 25817)
James Jay Tutchton (CO Bar # 21138)
WildEarth Guardians
1536 Wynkoop Street, Suite 301
Denver, CO 80202
(505) 988-9126
mhailey@wildearthguardians.org
jtutchton@wildearthguardians.org

Judith M. Brawer
1502 N. 7th Street
Boise, Idaho 83702
(208) 871-0596
jbrawerlaw@cableone.net

*Attorneys for Plaintiffs*

17

**CERTIFICATE OF SERVICE**

I, Melissa Hailey, hereby certify that on September 10, 2010, I filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send notification of such filing to the

following:


John Grosko: brett.grosko@usdoj.gov;

James Jay Tutchton: jtutchton@wildearthguardians.org;

Judith M. Brawer: jbrawerlaw@cableone.net;

Douglas S Burdin: dburdin@safariclub.org;

Paul A. Turcke: pat@msbtlaw.com, cam@msbtlaw.com;

William J. McGrath: wmcgrath@safariclub.org.


s/ Melissa Anne Hailey
Melissa Anne Hailey (NM Bar # 25817)
James Jay Tutchton (CO Bar # 21138)
WildEarth Guardians
1536 Wynkoop Street, Suite 301
Denver, CO 80202
(505) 988-9126
mhailey@wildearthguardians.org