WENDY J. OLSON
United States Attorney
NICHOLAS J. WOYCHICK, Civil Chief
U.S. Attorney's Office
District of Idaho
800 Park Blvd., Suite 600
Boise, Idaho  83712
Tel: 208-334-1211/Fax: 208-334-1414
nicholas.woychick@usdoj.gov

IGNACIA S. MORENO Assistant Attorney General
Environment & Natural Resources Division
J. BRETT GROSKO, Trial Attorney (Md. Bar)
Wildlife and Marine Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7369
Washington, DC 20044-7369
Ph: 202-305-0342/Fax: 202-305-0275
brett.grosko@usdoj.gov

*Attorneys for the Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS and<br>WESTERN WATERSHEDS PROJECT,<br><br>       Plaintiffs,<br><br>vs.<br><br>KEN SALAZAR,<br>United States Secretary of the Interior,<br><br>       Defendant, and<br><br>SAFARI CLUB INTERNATIONAL, and<br>SAFARI CLUB INTERNATIONAL<br>INTERNATIONAL FOUNDATION,<br><br>       *Amicus curaie*. | Case No.  CIV 08-508-EJL-LMB<br><br>**DEFENDANT'S REPLY IN SUPPORT<br>OF CROSS-MOTION FOR<br>SUMMARY JUDGMENT** |

## INTRODUCTION

This case concerns Plaintiffs WildEarth Guardians' ("WEG") and Western Watersheds Project's ("WWP") (collectively, "Plaintiffs") challenge to the U.S. Fish and Wildlife Service's ("FWS") 90-Day Finding, which concluded that Plaintiffs' petition to list the Columbian sharp-tailed grouse ("CSTG") under the Endangered Species Act ("ESA") did not present "substantial information" indicating that listing may be warranted.[1]

Plaintiffs' Response brief (Dock. Entry No. 49) offers no compelling reason why the Court should not grant Defendant's Cross-Motion for Summary Judgment (Dock. Entry No. 46) ("Motion").  First, Plaintiffs lack standing because none of their members has any "concrete plans" to observe the CSTG.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 563-64 (1992).  They are therefore not "among the injured."  Id.  Even if they had standing, moreover, their claim would fail on the merits.  In their opening brief, Plaintiffs asserted that FWS did not analyze whether that portion of the CSTG's historical range that is currently unoccupied is "significant" in its 90-day finding.  Defendant then countered that Plaintiffs failed to provide any information on the issue, and as such failed to meet their burden under the "substantial information" standard.  In response, Plaintiffs suggest that this failure was "irrelevant."  Indeed, somewhat paradoxically, Plaintiffs contend that what they actually meant all along was that any such analysis of "significance" should occur at the 12-month, not the 90-day finding stage of the

---

[1]  FWS issued this second 90-day finding after deciding previously that the CSTG was not eligible for listing after analysis in previous 90-day and 12-month findings.  90-Day Finding on a Petition to List the Columbian Sharp-tailed Grouse as Threatened, 64 Fed. Reg. 57,620 (Oct. 26, 1999); 12-Month Finding for a Petition to List the Columbian Sharp-Tailed Grouse as Threatened, 65 Fed. Reg. 60,391 (Oct. 11, 2000).  Plaintiffs have not challenged FWS's prior decisions.

listing process.  Plaintiffs have therefore contradicted their core contention and implicitly concede that their petition failed to meet their burden under the ESA.

The cases cited by Plaintiffs, moreover, lend their position no support.  Specifically, unlike in Plaintiffs' cases, here FWS appropriately analyzed the significant portion of the range issue to the extent possible, given the deficiencies in Plaintiffs' petition.  Finally, Plaintiffs' Response does not account for the fact that the information that they submitted demonstrates that the CSTG population is stable or increasing.  Requiring a 12-month finding based on a petitioner's bald assertion that the unoccupied portion of a species' range is "significant" would waste scarce agency resources on a subspecies that is already self-sustaining in the wild. Plaintiffs' interpretation of the ESA would therefore undermine the primary goal of the statute by siphoning resources away from species that truly merit protection.  Accordingly, the Court should reject Plaintiffs' misguided understanding of the ESA and grant Defendant's Motion.

## I.   PLAINTIFFS' RESPONSE BRIEF CONFIRMS THAT THEY LACK STANDING.

Plaintiffs' arguments concerning the Nichols, Salvo, and Fite declarations confirm that neither WEG nor WWP has standing.  To demonstrate standing, Plaintiffs must show more than "an injury to a cognizable interest," it must show that it is "among the injured."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 563-64 (1992).  To do so, it must submit evidence showing that "[its] members would . . . be 'directly' affected apart from their 'special interest' in the subject."  Id.  A plaintiff asserting such an interest must establish (1) that [he or she] has previously used or visited the area inhabited by the species; and (2) that the plaintiff has "concrete plans" to return to the species' habitat, such as the purchase of plane tickets.  See id. at 579 (Kennedy, J., concurring); id. at 592 (Blackmun, J., dissenting).  The mere expression of a general "intent" to do so again "some day" is "not enough."  Id. at 563-64.  Moreover, where the

government action being challenged does not require or forbid any action on the part of the plaintiff, standing is substantially more difficult to establish.  Wilderness Society v. Rey, -- F.3d --, No. 06-35565, 2010 WL 3665713, at *4 (9th Cir. Sept. 22, 2010).

Plaintiffs have failed to follow this simple formula.  For example, Plaintiffs contend that the Nichols Declaration (Dock. Entry No. 35-3) demonstrates that he was born in Idaho and "frequently recreated in areas historically and presently inhabited by the [CSTG]" when he was younger.  Pls. Resp. (Dock. Entry No. 49) at 3.  Even if Mr. Nichols had observed CSTG during these visits, which it appears he has not, the fact that some of Plaintiffs' members may have observed the CSTG in the past "proves nothing."  Id. at 564; Wilderness Society, 2010 WL 3665713, at *4 ("past injury is not sufficient to confer standing.").  As to more recent and future planned visits, moreover, the Response confirms that Mr. Nichols only plans to visit the habitat of "sharp tailed grouse"—not the Columbian sharp tailed grouse.  Pls. Resp. at 3-4.  Because there are six or seven different subspecies of "sharp tailed grouse", these alleged plans do not pass muster.

Next, Plaintiffs suggest that the portion of "southeastern Wyoming" that Mr. Nichols has visited is "sharp tailed grouse" habitat.  Pls. Resp. at 3 (citing Nichols' Decl. ¶¶ 3-4).  Again, this statement says nothing about whether the areas in southeastern Wyoming that Nichols has visited and plans to visit are inhabited by Columbian sharp-tailed grouse.  This argument also seeks to distract the Court from the fact that the map they provided shows "southeastern Wyoming" does not overlap with CSTG habitat.

Finally, Plaintiffs state that Mr. Nichols would have no need to make any "concrete plan" for travel to a "remote region."  Id. at 3-4.  This only demonstrates that Nichols actually has no plan to visit southeastern Wyoming.  Mr. Nichols would have to—a few days before his

3

departure—have chosen a particular day or week for his trip, purchased food, hiking equipment, or gasoline; planned his method of transportation from Golden, Colorado to southeastern Wyoming; or plotted a hiking itinerary.  Nichols Decl. ¶ 2.   His declaration mentions no such preparation.  The Nichols declaration therefore does not meet the "concrete plan" prong under Lujan.  Summers v. Earth Island Institute, 129 S. Ct. 1142, 1150-51 (2009) ("Such an indefinite and vague desire to return is insufficient under Article III").  The Nichols declaration is insufficient to demonstrate that WEG has standing.

The Salvo Declaration (Dock. Entry No. 35-4) fares no better.  Plaintiffs assert that as a WEG employee, Mr. Salvo is involved in efforts to protect CSTG and its habitat.  Pls. Resp. at 5 (citing Salvo Declaration ¶ 6).  However, allegations of a professional interest in an affected species are insufficient under Lujan.  Lujan at 567 (rejecting "vocational nexus" theory).  Moreover, Plaintiffs' Complaint claimed that Mr. Salvo "has studied and observed [CSTG] in southwestern Idaho and intends to continue doing so."  Compl. (Dock. Entry No. 1) ¶ 10 (emphasis added).  His declaration demonstrates that he was unable to make such a statement under oath.  Mr. Salvo has apparently never seen and has no plans to observe a CSTG.  The Salvo declaration therefore fails to meet either prong of the Lujan test, and WEG lacks standing.[2] Salvo Decl. ¶¶ 4-6 (not addressing whether declarant has observed a CSTG).

So, too, does WWP.   Plaintiffs assert that WWP employee Kathleen Fite has an interest in the CSTG.  Pls. Resp. at 5-6.  Her allegations of an aesthetic interest, however, also fail to

---

[2]      Because they appear on the ECF system to have been signed, Defendant withdraws his argument that the Fite and Salvo declarations were unexecuted.  Defs. Memo. (Dock. Entry No. 45) at 12.  Defendant notes that as the result of what may have been a computer glitch, when Defendant's counsel printed the declarations off from his home computer, shortly after Plaintiffs first filed them, the macros embodying Ms. Fite's and Mr. Salvo's signatures did not appear on the documents.  See Exhs. "A" and "B" (Salvo and Fite declaration signature pages without signatures).

meet the "concrete plan" prong of <u>Lujan</u>.  For example, the Fite Declaration (Dock. Entry No.

35-5) states that she has visited certain lands in Idaho and Nevada for the purpose of "studying

and enjoying" CSTG.  Fite Decl. ¶¶ 5-8.  In paragraph 7, Ms. Fite suggests that she has visited

the Hubbard Vineyard area of Nevada.  In paragraph 8, Ms. Fite states that she has visited the

Browns Bench China Mountain area of Idaho.  She goes on to indicate an intention to return to

Hubbard Vineyard in "2010", the Browns Bench China Mountain area in "summer 2010", and a

third site, the "Four Rivers Midvale-Council" area, in "2010."  <u>Id.</u> ¶¶ 6-8.  These vague

expressions of possible trips, however, fall woefully short of demonstrating a "concrete plan" to

return.[3]  Notably, unlike for the Nichols Declaration, Plaintiffs do not even attempt to explain

Ms. Fite's inability to describe any level of organization for these trips.  Plaintiffs therefore fail

to demonstrate that Ms. Fite has been "directly" affected by the 90-day finding.

     In sum, the Nichols, Salvo, and Fite declarations fail to demonstrate that WEG or WWP

has standing.  The Court should accordingly enter judgment for Defendant on this ground alone.

## II.    PLAINTIFFS' CLAIM FAILS ON THE MERITS.

     Even if the Court were to find that Plaintiffs have standing, however, their claim would

still fail, for at least three reasons.

### A.    *Plaintiffs Failed to Meet the Substantial Information Standard.*

     First, Plaintiffs failed to provide any information on biological significance in their listing

petition.  Under the ESA, after an interested person initiates the listing process by filing a listing

petition, FWS must determine whether the petition and data in FWS's files presents substantial

---

     [3]    <u>Lujan</u>, 504 U.S. at 564 (affiant's profession of an intent to return to place visited
before is "simply not enough"); <u>Wilderness Society</u>, 2010 WL 3665713, at *4 (vague desire to
return to the area " 'without any description of concrete plans, or indeed any specification of
*when* the some day will be' does not support a finding of actual or imminent injury") (quoting
<u>Summers</u>, 129 S. Ct. at 1151).

information indicating that the petitioned action may be warranted.  16 U.S.C. § 1533(b)(3)(A);
see also 50 C.F.R. § 424.14(b)(1).  At this stage, it is the petitioner's burden to provide FWS
with the necessary substantial information.  FWS, in making a determination, is to consider
whether the petition includes "information regarding the status of the subspecies over all or a
significant portion of its range; and . . . appropriate supporting documentation in the form of
bibliographic references, reprints of pertinent publications, copies of reports or letters from
authorities, and maps."  50 C.F.R. § 424.14(b)(2).

Plaintiffs do not dispute that the ESA places this burden on them.  However, when it
comes to whether they satisfied it, they now suggest that the inquiry is "irrelevant."  Pls. Resp. at
10.  This statement reveals that Plaintiffs are unable to reconcile the substantial information
standard with the facts of this case and their desired outcome.  Plaintiffs' conundrum is all the
more evident when considered in light of the evolution of Plaintiffs' litigation position.  In their
opening brief, Plaintiffs contended that the 90-day finding was unlawful for one reason: FWS
allegedly "fail[ed] to analyze whether that portion of the CSTG's historic range that is currently
unoccupied . . . is significant."  Pls. Memo. (Dock. Entry No. 35-2) at 8.  Now, in their Response,
Plaintiffs assert that FWS should have simply moved on to the 12-month stage, and then
conducted this analysis.  In their words, "the application of the Secretary's significance analysis
comes only after the Secretary has given a positive 90-day finding."  Pls. Resp. at 16 (emphasis
in original); see also id. at 13 ("it is the Secretary's duty to now undertake a 12-month status
review in order to determine whether that loss is significant, so as to warrant listing"), and 15
(arguing FWS should "move on to 'step two' in the listing process").  This inconsistency
demonstrates three things.  First, what Plaintiffs really seek is an order requiring FWS to conduct
another 12-month review.  Second, Plaintiffs have contradicted their argument that Defenders of

Wildlife v. Norton, 258 F.3d 1136 (9th Cir. 2001), required further analysis on the significant

portion of the range issue at the 90-day stage.  Third, they concede that they failed to meet the

substantial information burden.  In light of their failure to present the requisite information in

their petition, Plaintiffs cannot show that the Defendant acted unreasonably in making a negative

90-day finding.  As such, the Court should enter summary judgment for Defendant.

> **B.**     ***FWS Analyzed the Significant Portion of the Range Issue in a Manner that was Commensurate with the Amount of Information Provided.***

Plaintiffs' attempt to rehabilitate their argument through citations to judicial authority

also misses the mark.  Plaintiffs assert that "this Court and others have already noted the

propriety of applying [Defenders of Wildlife, 258 F.3d 1136 (9th Cir. 2001)] at 'step one' in the

listing process."  Both of the unpublished decisions that Plaintiffs cite, however, are

distinguishable.  Pls. Resp. at 11 (citing Western Watersheds Project v. Norton, CV 06-00127-S-

EJL,  2007 WL 2827375 (D. Idaho Sept. 26, 2007), and, for the first time, Center for Biological

Diversity v. Kempthorne, No. 06-04186 WHA, 2007 WL 163244 (N.D. Cal. Jan. 19, 2007)).  In

Western Watersheds Project, the Court remanded for further analysis because it held that FWS

had inappropriately applied a heightened standard at the 90-day stage.  2007 WL 2827375, at *6.

The court observed that "the Service never reached this question [of the species' status across a

significant portion of its range] as it had concluded that the Petition did not show a decline in

range nor a link between the loss of habitat and loss of population or a loss of habitat where

Pygmy Rabbits are actually found."  Id. at *7 (emphasis added).  The court continued "if

necessary based on the Service's findings on remand, the Service is directed to consider this

factor as directed in [Defenders of Wildlife]."  Id. (emphasis added).  Similarly, in Center for

Biological Diversity, the U.S. District Court for the Northern District of California found that

FWS had applied a standard that was overly stringent at the 90-day finding stage.  The court

went on to consider the significant portion of the range issue, and noted that FWS did "not deny

that [the significant portion of the range analysis was] not done."  2007 WL 163244 at *9.[4]  Both

cases, therefore, involved situations in which FWS had not performed any analysis of the issue.

Here, by contrast, FWS considered the issue in a manner that was appropriate given the

amount of information provided.  In a section titled "Significant Portion of the Range," FWS

acknowledged that the CSTG currently occupies less than 10 percent of its estimated historical

distribution.  Suppl. Admin. Record ("SAR") 7.  But FWS then noted that CSTG population core

areas, where 95 percent of the CSTG have occurred for the last 50 years or more, have remained

relatively constant, with recent increases.  Id.  FWS then stated that (a) most broad-scale impacts

to the CSTG that led to past declines in the subspecies' abundance and distribution took place

before the mid-1900s, (b) one of these, hunting, is either regulated or not authorized in all states

with CSTG populations, and (c) reintroduction actions for CSTG are ongoing.  Id.  FWS

observed, importantly, that no current data indicates declining trends overall.  Id.  In the absence

of any information on any biological significance that might tend to outweigh these factors, FWS

correctly concluded that the petition did not provide substantial information that the unoccupied

portion of the subspecies' range is biologically significant, i.e., significant to its long-term

persistence.  Id.  Accordingly, FWS considered the issue, and neither Western Watersheds

Project, nor Center for Biological Diversity has any bearing here.  Def. SOF ¶ 18; SAR 01546-

---

[4]         A similar situation concerning the Utah prairie dog arose in WildEarth Guardians
v. Salazar, -- F. Supp. 2d --, 2010 WL 3832061, 08–1596-CKK (D.D.C., Sept. 18, 2010) (noting
FWS also had not conducted any analysis of the significant-portion-of-the-range issue).  That
decision is therefore also distinguishable.

01547 (Doc. No. 99).[5]  Because FWS complied with its obligations under Defenders of Wildlife, the Court should grant summary judgment for Defendant.

       **C.**    ***Plaintiffs' Interpretation Would Undermine the Primary Goal of the ESA by Siphoning Off Resources Better Spent on Species that Are Not "Self-Sustaining" in the Wild.***

Plaintiffs' interpretation of the ESA—that an unsubstantiated assertion that the unoccupied portion of a species' range is "significant" is alone sufficient to trigger a 12-month finding—would collapse the two stages of the petition process in many cases, bypassing the 90-day finding requirement altogether.  It would, furthermore, undermine the primary goal of the ESA.  The overarching purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . ."  16 U.S.C. § 1531(B).  The ESA defines "conserve" as "to use . . . all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary."  16 U.S.C. § 1532(3) (emphasis added).  In other words, the ESA's "primary goal" is "to promote populations that are self-sustaining without human interference."  Trout Unlimited v. Lohn, 559 F.3d 946, 957 (9th Cir. 2009) (citing 16 U.S.C. § 1531(b)).

Here, Plaintiffs do not contest that the minimum net population increase between 2000 and 2004 was roughly nine percent, both rangewide and within the United States.  Compare Defs. SOF ¶ 48; with Pls. SOF Resp. (Dock. Entry No. 50-1) ¶ 48.  Plaintiffs also do not disagree that the CSTG's "three large metapopulations . . . have persisted for the last several decades with no discernable downward trend," meaning that "[t]he Colorado Metapopulation may have

_____

[5]    FWS also considered this issue as part of its 2000 12-month finding.  Defs. Memo. at n.4 (citing SAR 04817-04818 (Doc. No. 228)).

increased by roughly 25 percent between 2000 and 2004," the "Idaho Metapopulation may have increased slightly," and the "British Columbia Metapopulation may have increased by roughly 5 percent during the same period."  <u>Compare</u> Defs. SOF ¶ 49, <u>with</u> Pls. SOF Resp. ¶ 49.  Finally, Plaintiffs agree that "[g]iven the level of threat to these populations and ongoing conservation measures (e.g., translocations, habitat protection and restoration), in the near term (i.e., less than 100 years), the large metapopulations [which represent 95 percent of the subspecies' current range] will likely remain stable or increase in abundance and area of occupied range" and the "three large metapopulations will likely also remain stable in the long term (i.e., 100 years)."  <u>Compare</u> Defs. SOF ¶ 49, <u>with</u> Pls. SOF Resp. ¶ 49.  They did not challenge FWS's 2000 12-month finding, and they have not questioned this basic scientific assessment.

Nevertheless, Plaintiffs contend that FWS should conduct another, extensive 12-month finding.  Plaintiffs appear untroubled by the fact that: (a) the agency completed the last 12-month finding four years before they filed their latest petition; (b) FWS's 12-month finding found that the species did not warrant listing; (c) no party challenged the 12-month finding, rendering it presumptively valid in all respects, including consideration of the significant portion of the range issue; and (d) the data provided by Plaintiffs indicated that between the 12-month finding and their petition, the overall CSTG population has remained stable or increased.  This makes little sense.  Plaintiffs' reading of the substantial information standard would waste scarce resources that could be better spent on species that truly deserve protection, not those that are "self-sustaining."  <u>Trout Unlimited</u>, 559 F.3d at 957.  Plaintiffs' interpretation, therefore, would undermine the primary goal of the ESA itself.  The Court should reject Plaintiffs' mistaken interpretation of the substantial information standard.

10

**<u>CONCLUSION</u>**

For the foregoing reasons, and for the reasons stated in Defendant's Memorandum in Support of Cross Motion for Summary Judgment, the Court should deny Plaintiffs' Motion for Summary Judgment, grant Defendant's Cross Motion for Summary Judgment, and enter judgment for Defendant.

Dated this 8th day of October, 2010.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

*/s/ J. Brett Grosko*
_____
J. BRETT GROSKO
Trial Attorney (Md. Bar)
Wildlife and Marine Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7369
Washington, DC 20044-7369
Ph: 202-305-0342/Fax: 202-305-0275
brett.grosko@usdoj.gov

OF COUNSEL:

Eric Nagle
Office of Regional Solicitor
U.S. Department of the Interior

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 8, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Melissa Hailey

Judith M. Brawer

James Jay Tutchton.

*/s/ J. Brett Grosko*
_____
J. Brett Grosko