
Paul A. Turcke, ISB #4759
Moore Smith Buxton & Turcke, Chartered
950 West Bannock, Suite 520
Boise, Idaho 83702
Telephone: 208-331-1807
Facsimile: 208-331-1202
pat@msbtlaw.com

Douglas S. Burdin*
D.C. Bar # 434107
William J. McGrath*
D.C. Bar # 992552
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
dburdin@safariclub.org
wmcgrath@safariclub.org

Counsel for Safari Club International and
Safari Club International Foundation

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| WILDEARTH GUARDIANS, and<br>WESTERN WATERSHEDS PROJECT,<br><br>        Plaintiffs,<br><br>        v.<br><br>KEN SALAZAR,<br>U.S. Secretary of Interior,<br><br>        Defendant,<br><br>SAFARI CLUB INTERNATIONAL, SAFARI<br>CLUB INTERNATIONAL FOUNDATION<br><br>        *Amici Curiae*. | Case No. CV 08-508-E-EJL<br><br>**AMICUS BRIEF OF SAFARI CLUB INTERNATIONAL AND SAFARI CLUB INTERNATIONAL FOUNDATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

# Table of Contents

I.   **INTRODUCTION** ................................................................................................... 1

II.   **FACTS** ..................................................................................................................... 2

III.  **ARGUMENT** ......................................................................................................... 2

  A.  The Plaintiffs Have Failed to Provide Any New Information on Historical Range. 2

    1.  The Burden is on the Plaintiffs to Provide Substantial New Information. ........... 3

    2.  The Plaintiffs Have Failed to Provide Any Substantial Scientific or Commercial Information. ..................................................................................................... 3

    3.  The 2000 12-Month Finding is Binding and Not Under Review Here ............... 5

  B.  CSTG Populations are Increasing ........................................................................... 6

  C.  Hunters And Wildlife Would Be Harmed If The CSTG Is Listed As Threatened or Endangered. .......................................................................................................... 7

IV.  **CONCLUSION** ..................................................................................................... 9

## I. INTRODUCTION

Safari Club International and Safari Club International Foundation (collectively "Safari Club") by and through counsel, file this *Amici Curiae* brief in opposition to Plaintiffs' Motion for Summary Judgment.

Out of the issues in the 71 pages of a Petition to list the Columbian Sharp-Tail Grouse ("CSTG") as endangered or threatened filed in 2004 and the 21 pages of a 2006 supplement, Plaintiffs WildEarth Guardians *et al.* ("WildEarth") has found only one issue that they deem worthy of judicial review; whether the Service acted arbitrarily in analyzing whether the unoccupied historical range is a significant portion of the CSTG's range. To raise that question, WildEarth has an affirmative duty to provide substantial new information in their petition to list the CSTG that was not considered in the negative 12-month finding made by the U.S. Fish and Wildlife Service ("Service"). Safari Club agrees with the Federal Defendant's position that WildEarth's 2004 Petition and 2006 Supplement did not provide any new information about historical range and WildEarth's claim otherwise has no merit. Additionally, the record shows that the CSTG population is increasing. Finally, any success by WildEarth in getting the CSTG listed under the Endangered Species Act ("ESA") will cause significant harm to wildlife, hunters, and Safari Club International members.[1]

---

[1] While WildEarth only challenges the negative 90-day finding, several steps short of an actual listing, WildEarth's ultimate goal is to force the Service to list the species. This ultimate listing is what would cause the harm to Safari Club's interests addressed throughout this brief. Upholding the 90-day finding would foreclose a later listing based on the 2004 Petition discussed below.

## II. FACTS

In 2000, after completing a 12-month status review, the Service determined that listing the CSTG was not warranted. *12-Month Finding for a Petition to list the Columbian Sharp-Tailed Grouse as Threatened* (October 11, 2000) ("2000 12-Month Decision"), Administrative Record ("AR") 2288-2293. WildEarth did not challenge this finding. Defendants' Statement of Material Facts ¶ 37 (Doc. No. 35-1). In 2004, WildEarth and other organizations filed a 71-page petition with the Service with the goal of forcing the Service to list the CSTG as an "endangered" or "threatened" species. *Petition to the U.S Fish and Wildlife Service to List the Columbian Sharp-tailed Grouse as an Endangered or Threatened Species Under the Endangered Species Act, 16 U.S.C.§ 1531 et seq. (1973 as amended), and to Designate Critical Habitat* (October 18, 2004) ("2004 Petition"), AR 1662-1737. In 2006, the petitioners also added a 21 page supplement to their 2004 Petition. *Columbian Sharp-tailed Grouse Status Update* (November 8, 2006) ("2006 Supplement") AR18-38. After conducting a 90-day review, the Service denied the petition in November of 2006. *90-Day Finding on a Petition to list the Columbian Sharp-Tailed Grouse as Threatened or Endangered* (November 21, 2006) ("2006 90-day Decision") AR1- 8. WildEarth is now challenging the 2006 90-day Decision that denied their petition.

## III. ARGUMENT

### A. The Plaintiffs Have Failed to Provide Any New Information on Historical Range.

WildEarth's only argument —that the 2006 90-Day Decision is unlawful because, WildEarth claims, it failed to analyze whether the unoccupied historical range is a significant portion of the CSTG's range – lacks merit. Plaintiffs' Memorandum in

Support of Motion for Summary Judgment ("WildEarth Memorandum") at 1 (Doc. No.35-2).  WildEarth has failed to provide any significant new information in their 2004 petition that the Service did not previously analyze in the 2000 12-Month Finding.[2]

### 1. The Burden is on the Plaintiffs to Provide Substantial New Information.

The ESA states that, upon receiving a petition, the Service must conduct a 90-day initial review to determine "whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C. § 1533(b)(3)(A).  This Court has held that the plaintiff bears the burden of presenting the required substantial scientific or commercial information. *Western Watersheds Project v. Hall*, No. CV 06-0073-s-EJL, 2007 WL 2790404, at *4 (D. Idaho 2007) ("It is the petitioner's burden to provide the Service with the necessary "substantial scientific or commercial information.").  Federal regulations define substantial information as "the amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R § 424.14(b)(1).  The Service correctly concluded that WildEarth failed to provide the information necessary to support their Petition.

### 2. The Plaintiffs Have Failed to Provide Any Substantial Scientific or Commercial Information.

Under the unique situation at issue here, WildEarth has failed to provide any information that would warrant another status review of the CSTG.  Just four years

---

[2] In its 2006 90 day Decision, the Service adequately addressed historical range as part of its significant portion of the range analysis.  Since the Defendant's Combined Memorandum of Law in Support of His Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment addresses this issue, Safari Club will not duplicate this argument.

before the 2004 Petition, the Service conducted a full 12-month review of the CSTG's status and determined that listing the CSTG as a threatened species was not warranted. 2000 12-Month Finding.  The Service reviewed and relied upon significant scientific data to arrive at the 12-Month Finding, including the same study relied upon in the WildEarth's challenge to the 2006 90-day Finding.

WildEarth focuses on why the Service is required to consider the unoccupied historical range of the CSTG to determine if it was significant, but spends inadequate time discussing the data WildEarth relies on to determine the unoccupied historic range. By focusing on the legal requirements that are found in *Flat-tailed Horned Lizard I*, 258 F.3d 1136 (9th Cir. 2001) and *Flat-tailed Horned Lizard II*, 566 F.3d 870 (9th Cir. 2009), WildEarth attempts to obscure the lack of any new information in the 2004 Petition and 2006 Supplement.  Essentially, WildEarth relies on only a single point to support their challenge – a claim by Dr. Jonathan Bart in 2000 that the CSTG has been extirpated from 92 to 95 percent of its historic range.  AR1719; WildEarth Memorandum. at 1.  While this information may have been relevant during the 2000 12-Month Finding, it is not significant now.  The Service cited Dr. Bart's report 16 times in the 2000 12-Month Finding.  AR2290-2293.  This heavy reliance on Dr. Bart's report shows that the Service fully considered and analyzed the report in the 2000 12-Month Finding.  WildEarth's selective reliance on one line from one report that has already been considered should not force the Service to conduct a second expensive and time-consuming 12-month review.

WildEarth cites nothing to support the proposition that the exact information that was fully analyzed in 2000 would warrant another 12-month status review only 4 years later.  The ESA does not require another 12 month review so soon after the previous

4

finding, especially absent a separate showing of changed circumstances. The Service's precious resources are better spent on helping species that actually need protection.

In addition, policy concerns militate against ruling in WildEarth's favor. If the "substantial scientific or commercial information" that could trigger a 12-month status review is not required to be new information in this circumstance, as WildEarth appears to argue, the Service could be faced with a steady flood of new petitions that simply rehash information previously submitted and/or considered by the Service. For example, once the Service performed a 12-Month finding on a species, it would be forced to perform a new 12-month review anytime a new petition to list that species, based on the exact same scientific data, is filed in the future. Presumably, if there was enough "substantial scientific or commercial information" to trigger the initial 12-Month review, a petitioner would be able to cite that same "substantial" information in every subsequent petition and the Service would be required to perform another 12-Month review.[3] Thus, a ruling allowing serial petitions based on the same data would defeat the purpose of the listing process, which is to allow the Service to concentrate its limited resources on species that need protection.

### 3. The 2000 12-Month Finding is Binding and Not Under Review Here

In submitting a new petition and challenging the Service's refusal to reverse its previous finding, WildEarth is attempting to avoid the statute of limitations. WildEarth had the opportunity to challenge the 2000 12-month finding on the CSTG. They failed to

---

[3] With the CSTG, the Service was able to end the listing process one step sooner – at the 90-day finding stage, because the 2000 12-Month Finding process created additional information in the Service's files that established that not even a 12-Month status review was warranted.

5

do so within the six-year statute of limitations.  The Endangered Species Act prescribes no statute of limitations of its own, so the general six-year statute of limitations for suits against the United States applies.  28 U.S.C. § 2401(a); *Edwards v. Shalala*, 64 F.3d 601, 605 (11th Cir.1995) (finding that section 2401(a) "sets an outside time limit on suits against the United States").  At the time of the WildEarth's 2004 Petition to List the CSTG, they still had ample time (two years) to challenge the 2000 12-month ruling.  If they had issues with the 12-Month Finding, WildEarth should have challenged it at that time.   In essence, by suing on a new petition that includes no new scientific information, WildEarth is asking this Court to review the decision made by the Service in its 2000 12-Month Finding.  It is too late for WildEarth to make that challenge.  The only decision that this Court should review is "whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  This Court must focus on the decision properly under review rather than the pre-existing decision that Plaintiffs failed to challenge within the time allowed.

  **B.  CSTG Populations are Increasing**

Although WildEarth's petition contained no new scientific data to justify listing the CSTG, its petition did reveal new data to justify the Service's decision that the Petition did not present substantial information that listing may be warranted.  *See* 16 U.S.C. § 1533(b)(3)(A).  The total number of CSTG is increasing.  The 2006 90-day Finding states that:

> By comparing the available information in our files with information contained in the 2004 petition, the estimated minimum net increase in Columbian sharp-tailed grouse abundance between 2000 and 2004 would be roughly 9 percent, both range-wide and within the conterminous United States, as indicated by the petition.

6

AR 4 (internal citations omitted). The Service reached this conclusion based on the estimates contained in WildEarth's own petition. If the birds were not threatened or endangered in 2000 and the numbers are increasing, another 12-Month review is not necessary. The Service made the correct decision to deny the petition rather than redo an unchallenged 12-month finding from only four years before.

### C. Hunters And Wildlife Would Be Harmed If The CSTG Is Listed As Threatened or Endangered.

Safari Club members and hunters throughout the West would be harmed if this Court finds that further review of the listing status of the CSTG is warranted at this time. Safari Club members and many other hunters enjoy recreational activities, including regulated hunting of CSTG throughout the west. An unwarranted and unnecessary listing of CSTG would put an end to CSTG hunting in the listed area. In its motion for leave to participate as amici curiae in this matter, Safari Club submitted declarations demonstrating its members' interest in hunting the CSTG. Alver Decl. ¶7, Doc. No. 37-2 ("I plan to continue hunting sharp-tail grouse in fall 2010 in Southeast Idaho. I have spent over four thousand dollars on equipment in preparing for my hunt."); Krasa Decl. ¶10, Doc. No. 37-3 ("I plan on continuing to hunt Columbian Sharp-tailed grouse this fall in Bannock, Freemont and Oneida counties in Idaho, as I have done for most of the last 28 years."). This injury to hunters would bring no benefit to CSTG as the Service has stated that regulated hunting does not harm CSTG populations. AR4 ("current estimated harvest rates are not likely to adversely affect the metapopulations of the Columbian sharp-tailed grouse in the States with hunting seasons"). A closure of CSTG hunting would therefore reduce or eliminate the recreational opportunities of these Safari Club members and many others, while providing no benefit to the CSTG.

7

Additionally, as an organization that promotes the principle and practice of sustainable use conservation, Safari Club believes that the existence of abundant hunting opportunities is important to a species' conservation. Hunting plays a strategic role in wildlife management and conservation throughout the world. Courts, presidents, state legislatures and federal agencies have acknowledged the benefits of hunting.

Many states have adopted laws that guarantee the right to hunt, numerous state legislatures have codified statements about the social and environmental benefit that hunting brings to their human and wildlife populations and to state resources. Several states have adopted laws recognizing hunting as a recreational, wildlife management and conservation tool. The executive branch has similarly recognized the significance of hunting. Both President Bush and President Obama have declared hunting as an important tool of wildlife conservation. Presidential Proclamation No. 8421, 74 Fed. Reg. 49305 (Pres. Obama 2009) (hunting and fishing are "ageless pursuits" that promote "the conservation and restoration of numerous species and their natural habitats"); Presidential Proclamation No. 8295, 73 Fed. Reg. 57233 (Pres. Bush 2008) (hunters and anglers "add to our heritage and keep our wildlife populations healthy and strong," and "are among our foremost conservationists").

Justice Alito has also commented on the value of hunting in a recent case. *Untied States v. Stevens*, 130 S.Ct 1577, 1596 (2010) (Alito, J. dissenting) ("[I]t is widely thought that hunting has 'scientific' value in that it promotes conservation, 'historical' value in that it provides a link to past times when hunting played a critical role in daily life, and 'educational' value in that it furthers the understanding and appreciation of nature and our country's past and instills valuable character traits.").

Federal law has also made hunting an essential component of the financial aspect of wildlife and habitat management and conservation throughout the United States. The Federal Aid in Wildlife Restoration Act, 16 U.S.C. § 669 *et seq.* (1937), directs a portion of the excise tax on sporting arms and ammunition to the states to finance approved projects involving wildlife habitat, introduction of wildlife onto habitat, and wildlife research. Therefore, any closure of CSTG hunting would affect the amount of funding available for habitat management and conservation throughout the United States.

Legal hunting activities take place around the country and around the world. Hunting enhances the environment and brings joy to those who use the outdoors and should therefore be encouraged. Upholding the Service's negative 90-day finding, particularly in light of the lack of any new scientific information and the more recent increase in the bird's population, would serve the purposes of not only the ESA, but of laws and pronouncements that support hunting as a form of sustainable use conservation.

## IV. CONCLUSION

WildEarth has filed a challenge to the Service's proper denial of their listing petition. Their petition offered the Service no new data to justify a positive 90-day finding for the CSTG. In fact, WildEarth's 2004 Petition and 2006 Supplement gave the Service additional data – positive population data – to justify the decision not to list. CSTG do not belong on the threatened species list and any ultimate listing of the species would bring unnecessary harm to the hunting community and the conservation of the species provided by sustainable use.

For the reasons discussed in this brief and by the Federal Defendants in their Memorandum, *amici curiae* Safari Club respectfully requests that the Court deny the

WildEarth's Motion for Summary Judgment and grant the Defendant's Cross-Motion for Summary Judgment.

Dated: October 25 2010.

        Respectfully Submitted,

        /s/ Paul A. Turcke
        Paul A. Turcke, ISB #4759
        Moore Smith Buxton & Turcke, Chartered
        950 West Bannock, Suite 520
        Boise, Idaho 83702
        Telephone: 208-331-1807
        Facsimile: 208-331-1202
        pat@msbtlaw.com

        /s/ Douglas S. Burdin
        Douglas S. Burdin
        D.C. Bar # 434107
        Safari Club International
        501 2nd Street N.E.
        Washington, D. C. 20002
        Telephone: (202)-543-8733
        Facsimile: (202)-543-1205
        dburdin@safariclub.org

        /s/ William J. McGrath
        William J. McGrath
        D.C. Bar # 992552
        Safari Club International
        501 2nd Street N.E.
        Washington, D. C. 20002
        Telephone: (202)-543-8733
        Facsimile: (202)-543-1205
        wmcgrath@safariclub.org

        Counsel for
        Safari Club International and
        Safari Club International Foundation

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 25th day October, 2010, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**James Jay Tutchton**
WildEarth Guardians
1536 Wynkoop St #301
Denver, CO 80202
(303) 573-4898
Email: jtutchton@wildearthguardians.org

**Judith M Brawer**
1502 N 7th St
Boise, ID 83702
208-871-0596
Email: jbrawerlaw@cableone.net

**John Grosko**
U.S. Department of Justice
ENRD-Wildlife and Marine Resources
Washington, DC 20044-7369
(202) 305-0342
Email: brett.grosko@usdoj.gov

**Melissa Anne Hailey**
W. Randolph Barnhart, P.C.
50 South Steele Street
Suite 500
Denver, CO 80209
303-377-6700
303-377-6705 (fax)
mhailey@rbarnhartlaw.com

                                           Respectfully Submitted,

                                           /s/ William J. McGrath
                                           William J. McGrath